Brockenbuough, J.
It seems to me that the first and principal instruction given to the jury by the circuit court of Orange, on the last trial of this cause, is not to be justified by the opinion of this court formerly rendered.
The instruction which was asked for on the first trial in the circuit court of Frederick, was founded on the hypothesis, that the bargain between the bank and Stribling was evidenced by the written proposition of the latter, and the letter of the cashier written (as alleged) under the authority of the board of directors, and upon the subsequent discount of the two notes “ in conformity with the terms” set forth in the cashier’s letter. No stress was laid by a majority of this court, on the terms of the resolution of the board itself, nor indeed does it appear that the counsel for the defendant in the court of Frederick, who excepted to the opinion of that court, viewed that resolution as constituting one of the terms of the compact between the parties; and his ground seems to have been, that the resolution was “ never communicated to the said Stribling." But in the case as now presented, the resolution of the board, explained as it is, by the evidence of the cashier, does form one of the elements from which we are to decide tihe question whether the transaction was usurious or not. It is surely proper that it should be taken into *55 consideration. The parties to the transaction were the board of directors on one side, and Stribling on the other. If the contract which they agreed to make with Stribling, was not a iorbearauce for the loan of money at an illegal rate, their contract ought not to be avoided on the ground of usury, although StribUng's proposition was to borrow money at an illegal rate, and the cashier did in his letter accedo to such proposition. For though the cashier was the agent of the board, yet they could not be affected by any contract which he might make, not in accordance with their agreement.
This court formerly decided, that the sale of the stock at a price considerably above its value, was indissolubly connected with the loan of 2500 dollars, and made the whole contract usurious and void. This opinion was founded on the proposition of Stribling, and the acceptance of it by the cashier. His letter expressly states, that the board had agreed to discount for Stribling two notes, one for 10,000 dollars, the other for 2500 dollars, for eighteen months, on his giving negotiable notes with certain persons as makers a,nd indorsers j in payment for which discount (the letter said) “you will receive 100 shares of stock, and the balance in money.” This was an agreement in terms to lend him 12,500 dollars, and instead of paying him all of it in cash, to transfer to him stock at a greater than the market price, in part of the loan. This, the court said, was clear usury, and was completely within the principle of Pratt v. Willey, 1 Esp. Rep. 41. Davis v. Hardane, 2 Camp. 375. Doe v. Barnard, 1 Esp. 11. I refer to the opinions of judge Carr, 5 Rand. 147. and of judge Cabell, pp. 192, 3. to shew, that this was the ground on which they decided the case.
Was the cashier authorized by the board to make such agreement ? I. think not. It was very different, in my opinion, from the contract which they agreed to make. The evidence of the cashier shews that the *56 board rejected Stribling's proposition. But they agreed t0 se^ him 100 shares of their stock at par, for which they would receive certain specified negotiable notes payable at the end of sixty days, and to be renewed from time to time for the term of eighteen months. If the agreement had stopped there, no one would have considered it as a contract for an usurious loan. It would have been merely an agreement to sell stock on a credit of eighteen months, carrying interest from the date, but at a price higher than the market- price. I suppose there is no doubt, that any person, natural or corporate may dispose of stock, or any other property, at a high price, on time, without being subject to the penalties of usury, unless the sale be indissolubly connected with a loan, or be a mere shift to evade the statute. But the cashier further proves, that a member of the board, after the sale had been agreed to, proposed that they should lend Stribling 5000 dollars, on accommodation for eighteen months : this was rejected. And then, at the earnest solicitation of the same member, they agreed to discount a note for him for 2500 dollars. The agreement of the board as to the sale and loan, was then put into the form of a written resolution, and the two subjects of the sale and loan were kept separate and distinct from each other.
Does the written resolution of the board, or the evidence of the cashier, prove that the sale and loan were indissolubly connected with each other, or that the sale was a mere shift to evade the statute ? The question of the connexion of the two subjects, depends on the proper solution of the following questions: 1. did the directors agree to sell the stock in consequence of Stribling agreeing to borrow a further sum ? 2. did they agree to make the loan in consequence of his having agreed to purchase the stock at a high price ? or 3. did they agree to lend, him the sum of 2500 dollars, in consequence of any apprehension or belief, that, if they did *57 not, Stribling would refuse to close the bargain for the ° sale ol the stock r
I must here remark, that, in my opinion, it would. have been more proper to have left the decision of these subjects to the jury, untrammelled by any opinion which the court might entertain on them. Where usury is not proved by direct evidence, it can only be proved by inferences from the evidence given, and it seems to be the province of the jury to draw the proper inferences from the evidence; in other words, it is their duty 1.o decide not only on proved but inferred facts. The question, here, does not depend on proof of any loan of money at unlawful interest: the question is, whether a loan at a lawful rate, can be connected with a sale at an exorbitant price, so as to convert the latter into a loan ? Now, this seems to depend on the motive or intention of the party who made the loan and sale. I do not mean to say, that where there is a direct negotiation for a loan of money or other thing, and more than the legal rate of interest is contracted to be given and taken, the intention of the parties is of any consequence : iri such case, whether they intend to violate the law or not, the contract is invalid if they do violate it. But where the negotiation is partly for a loan at lawful interest, and in part for a sale, the question is, whether the sale is a pretended one ? whether it is a shift, a contrivance concocted by one party and agreed to by the other, for the purpose of evading the statute? Hence, in such ease, the intention is of great importance. But this motive or intention ca,n be judged of only by the circumstances ; and of those circumstances, and of the intention to be ascertained from them, the jury ought to be allowed to judge. I therefore think, that the court ought not to have given the required instruction, but ought to have left it to the jury.
But, if it was proper for the court to give its opinion on the hypothetical case stated in the hill of exceptions, *58 I do not think that the court drew the correct inference from the evidence. I do not think that, according to the evidence of the cashier, or the written resolution of the board, the sale and the loan were indissolubly connecte(j wjth each other, or that the sale was a mere shift to evade the statute. 1. It does not appear, that the directors were induced to make a sale of their stock, in consequence of Stribling agreeing to borrow a further sum of money. The sale was agreed to be made, before the loan was agreed to. The high price offered for the stock, and the satisfactory security which was tendered for it, afforded of themselves a sufficient inducement for the directors to make the sale, without imputing to them the unreasonable design of making the sale depend on a loan of much smaller amount. It can hardly be supposed, that they would refuse- to sell for so advantageous a price, unless he would also agree to borrow the smaller sum. Nor, 2. do I think, in the absence of proof to the contrary, it ought to be inferred by the court, that the directors would refuse to lend 2500 dollars on the security which was offered, even though the borrower would not agree to purchase the stock at the price which was asked for it. But 3. did the directors agree to lend the 2500 dollars, in consequence of any apprehension or belief, that, if they did not, Stribling would refuse to purchase the stock ? There may, indeed, be some ground to suspect, that such was the inducement for the loan; but there is no proof of it •, and 1 do not perceive, that there is any evidence from which that deduction can be justly made. On the contrary, it was proved, that there was no conversation or remark among the members of the board at any time, indicating that the loan of money should be offered as an inducement to Stribling to buy the stock, or should depend on his agreeing to take the stock.
I am of opinion, that the judgment should be reversed, and the verdict set aside.
*59 Care., J.
When this cause was formerly before us, we decided, 1. that upon facts found or agreed, or upon a case hypothetically put, it was the province of the court to pronounce whether such facts amounted in law to usury : 2. that where, upon a negotiation for a loan, the lender connected therewith a sale of property (whether goods, stocks, or any other thing) making the loan dependant on the sale, and asking for the property a price clearly above the market value, such transaction was usurious. According to the established rule of this court, these points are to be taken as settled law, in this examination; and the question is, whether the case, as now presented to us, is beyond their influence ?
That the object of Stribling was to raise 10,000 dollars, and that object clearly disclosed to the bank, is apparent from several circumstances. In his first communication to the president of the bank, requesting a meeting of the board, he said, his object in asking an extra meeting, was to submit to them a proposition “for the purpose of purchasing bank stock, and an accommodation consequent upon it.” In his written proposal, after the oiler to take 100 shares at par, he added, that the proposition was made “ on the faith of the expectation, that, if acceded to, the bank would discount for him upon the stock, a note of 80 dollars on each share, and 2060 dollars more” &c. And in the conclusion he said,—“ I oiler my brothers &e. as indorsers upon the note of 2000 dollars, which together with the stock, is to make the 10,000 dollars I am to receive.” How did the bank deal with this proposition? The directors refused to take separate notes with separate indorsers ; they also refused to take the stock on deposit; but the entry on their book said—“ Erasmus Stribling having agreed to purchase 100 shares of the stock belonging to this- institution, for the sum of 10,000 dollars, Resolved, That the note of E. Stribling, Francis Stribling &c. as drawers, and endorsed by Sigismund Stribling, *60 shall be received for the said sum of money, and shall be regularly renewed, and the discount paid, at the expiration of every sixty days, for and during the term of eighteen months; also, that the said E. Stribling g^p ^ave a loan 0f 2500 dollars from this institution, for the same term of eighteen months, upon the same terms” &c. Let us look for a moment, at the subject, in the light these papers shed on it, without adverting to the letter of the cashier, or his parol evidence. Stribling tells the bank, “I want to get 10,000 dollars on loan; to effect this object, I will take of you 100 shares of your stock at par, if you will credit me for eighteen months, take the stock on deposit at eighty dollars in the hundred, and also lend me 2000 dollars, so as to make up the 10,000 dollars.” The directors answer— “ It does not suit us to take the stock on deposit; but we will sell it to you, and if you take it at par, we will lend you 2500 dollars, on the same terms : we offer 500 dollars more than you ask, because as you cannot deposit the notes at more than seventy-five dollars in the hundred, you will want that in addition, to make up the 10,000 dollars.” I do not offer this as the language of the parties, but as the understanding, which these papers seem to me to establish between them; as the ground on which the negotiation thus far placed them. The offer of the bank was accepted by Stribling. Both knew that the highest selling price of the stock at the time, was eighty dollars for the share of one hundred. Do not these facts speak a language too plain to be misunderstood ? Suppose Stribling’s proposition had been for a loan in money of J 0,000 dollars, and the bank'had refused the money, but offered its stock at twenty per cent. above the selling price, and a loan of 2500 dollars, so as to enable the borrower to realize the 10,000 dollars ; can any body for a moment doubt, that this would have been palpable usury ? And what is the difference ? Is not the object equally intelligible here ? Stribling’s ob *61 ject in applying for stock to raise money on, and such a sum on loan as would make up his loss on the stock, was just as clear as if he had asked a loan of 10,000 dollars ; and the effect was the same to the bank, as if, in reply to that, it had sold him stock, and made up the deficiency by a loan. In cither case, it was a loan connected with, and consequent upon, a sale of stock at twenty per cent, above its value. I say a loan consequent upon the sale; for in addition to the other circumstances connecting them, there is this, that Stribling, in his written proposition, made the purchase and the loan to depend on his having eighteen months credit, saying he would not accept it on a shorter credit; and the directors gave him that time. In doing this, they violated a positive and express restriction of their charter, prohibiting them from lending their funds for a period longer than one hundred and twenty days, and subjecting those directors who shall violate it to a heavy-penalty. Now, can we suppose that the board would have done this, for the mere purpose of making a loan of 2500 dollars, unconnected with any other object? No : it was the prospect of making this advantageous sale of the 100 shares of stock, which tempted them. The monej- they could lend any day, on the terms allowed by their charter; but such an oiler for their stock rarely occurred, and they could not resist it. If Stribling had said, “I decline the purchase of your stock, but I will take,the loan you offer, for the eighteen months,”— can any body believe he would have gotten it ? I cannot.
Such is the impression which the written proposition of Stribling, the resolution of the board, and the acceptance of the terms of that resolution, have made on my mind. Is this aspect of the case changed by the parol testimony of the cashier ? To my mind, not at all. In the first place, what he tells us of the progress of the negotiation at the board, the rejection of the proposition to take the stock on deposit, the agreement to sell, the *62 refusal to lend 5000 dollars, and the lending 2500 dol- . 0 lars, are m themselves matters ox Little moment; the mere deliberations of the directors among themselves, never disclosed to the borrower, and therefore never en(:erjng pjg views of the matter. His only knowledge of the terms offered by the bank was derived from the letter of the cashier; the officer whose appropriate business it was, to make such communications to applicants ; the organ through whom the bank dealt with its customers. If this agent had even misrepresented the intention of his principals, and made for them an usurious contract, which they did not intend, I am not prepared to say that they would not have to suffer the loss; as in the case of Barnet v. Tompkyns, Skin. 348. where the wife lent money upon usury, and lord Holt said, that, though it was not sufficient to charge the husband criminaliter, it was sufficient to discharge the bond civiliter. But this is a point which I merely touch, without resting upon it. I do not think the cashier’s letter at all misrepresented the meaning of the board. The transaction was one and entire, and he so stated it. He tells us, in his testimony, that he had nothing but the entry and proceedings in bank to guide him in his letter; and it seems to me that he construed them very correctly. Indeed, if they were more doubtful than they seem, I do not know where we could look for a more authoritative exposition than this, given by the confidential agent, who was present at all the consultation, was then fresh from it, and could at that time have had no possible motive to misrepresent what had passed.
It will be obsei’ved, that, in the view I have taken of this subject, I have not given a separate consideration to the decisions of the circuit court on the various points submitted : I have thought it best to present a general connected view of the whole subject. I think the points were correctly decided, and that the judgment must be affirmed.
*63 Cabell, J.
The principles decided in this cause, when it was here before, are applicable to it as it is exhibited in the present record; for there is not, in my opinion, any substantial difference between the case as presented then and as presented now. The parol testimony of the cashier relates to matters, which ought not to have any influence on the case : and his letter is a correct exponent, in substance, of the resolution of the board of directors, although it is somewhat different in form. I think all the points decided by the circuit court, were correctly decided, and that the judgment should, be affirmed.
Judgment affirmed.